UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE REAL ESTATE BAR ASSOCIATION FOR MASSACHUSETTS, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 07-10224-JLT |
| NATIONAL REAL ESTATE INFORMATION SERVICES and NATIONAL REAL ESTATE INFORMATION SERVICES, INC., | * * * * | |
| Defendants. | * | |

MEMORANDUM

August 17, 2009

TAURO, J.

I.   Introduction

Presently at issue is Defendants National Real Estate Information Services and National Real Estate Information Services, Inc.'s (collectively "NREIS") Motion for Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 1988. For the following reasons, NREIS's Motion is ALLOWED.

II.   Background

Plaintiff The Real Estate Bar Association for Massachusetts, Inc. ("REBA") brought this action claiming that NREIS had engaged in the unauthorized practice of law in Massachusetts by performing real estate conveyances, conducting so-called "notary closings," and issuing title insurance. NREIS counterclaimed under 42 U.S.C. § 1983 that REBA's interpretation of the practice of law, and enforcement of that interpretation, violated the Dormant Commerce Clause of the U.S. Constitution. This court explained the relevant facts in greater detail in its April 13,

2009 Memorandum,[1] which allowed NREIS's Motion for Summary Judgment and Motion for Summary Judgment on Dormant Commerce Clause Counterclaim, and denied REBA's Motion for Summary Judgment.[2] NREIS filed the pending Motion on April 27, 2009, and this court held a hearing on the Motion on August 12, 2009.[3] NREIS now seeks $904,076.17 in attorneys' fees and costs,[4] plus a risk factor enhancement.[5]

III. Discussion

    A.    Qualification for Attorneys' Fees and Costs Under 24 U.S.C. § 1988

A district court may, in its discretion, award reasonable attorneys' fees to the prevailing party on a § 1983 claim.[6] A prevailing party is one who has "succeed[ed] on any significant issue

---

[1] See Mem. 2–3, Apr. 13, 2009.

[2] See id. 1, 22; see also Order of J., Apr. 13, 2009.

[3] At the hearing, this court admitted into evidence: (1) NREIS's billing records in support of its $904,076.17 fee request as Exhibit A; and (2) the affidavit of Thomas E. Dwyer in support of the reasonableness of the fees as Exhibit B.

[4] NREIS's original request for attorneys' fees and costs was for $879,380.00. See Defs.' Mem. Supp. Mot. Att'ys' Fees & Costs 3. NREIS has since modified that request to account for discounts for the month of April that were not included in the initial fee request, fees and costs related to this motion and REBA's Motion to Amend and Alter Judgment, and costs incurred during the months of April and May. See Ricciuti Aff. 2–3, June 8, 2009.

[5] This court stated in its Memorandum and Order of Judgment that "[e]ach side shall bear its own costs." Mem. 22, Apr. 13, 2009; Order of J., Apr. 13, 2009. To the extent that NREIS's present Motion asks this court to revisit its prior decision on costs, the Motion is also for reconsideration. Reconsideration is "proper if the initial ruling was made on an inadequate record or was designed to be preliminary or tentative." Ellis v. United States, 313 F.3d 636, 647 (1st Cir. 2002). Parties not having briefed the issue of attorneys' fees at summary judgment, this court's reconsideration of the issue is clearly proper.

[6] 42 U.S.C.A. § 1988 (West 2009) ("In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of

in litigation which achieves some of the benefit the parties sought in bringing suit."[7]  In other words, a party prevails "when the actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying defendant's behavior."[8]

REBA denies that NREIS is the "prevailing party" on its Dormant Commerce Clause counterclaim, arguing that this court rejected REBA's interpretation of Massachusetts law and thus rendered any subsequent decision on the Dormant Commerce Clause counterclaim advisory and insufficient to alter the legal relationship between REBA and NREIS.  But this court did not define the practice of law in Massachusetts, in favor of REBA's interpretation or otherwise.[9]  The "judicial branch of government has exclusive power to determine what constitutes the practice of law,"[10] and the Massachusetts Supreme Judicial Court ("SJC") "has addressed [this question] on a case-by-case basis."[11]  REBA is authorized as a Massachusetts bar association to enforce the commonwealth's unlawful practice of law statute[12] and, relying largely on the SJC case In re Opinion of the Justices, has acted to enforce that statute against NREIS.  REBA's actions to enforce its interpretation of the practice of law placed NREIS's Dormant Commerce Clause rights

---

the costs . . . .").

[7]De Jesús Nazario v. Morris Rodríguez, 554 F.3d 196, 199 (1st Cir. 2009) (citation and quotation omitted).

[8]Id. (citations and quotation omitted).

[9]See Mem. 13, Apr. 13, 2009.

[10]Id. 7 (citing In re Opinion of the Justices, 194 N.E. 313, 316 (Mass. 1935)).

[11]Id. 8 (citing In re Shoe Mfrs. Protective Ass'n, 3 N.E.2d 746, 748 (Mass. 1936) ("To a large extent each case must be decided upon its own particular facts.")).

[12]See Mass. Gen. Laws Ann. ch. 221, § 46B (West 2009).

and the First Circuit's opinion in National Revenue Corp. v. Violet[13] squarely at issue.

Holding that REBA violated the Dormant Commerce Clause, and issuing a permanent injunction in NREIS's favor, resulted in a material alteration of Parties' legal relationship. REBA is now "enjoined from enforcing on NREIS its interpretation of the practice of law as encompassing (1) all the interconnected activities of a real estate conveyance and (2) the issuance of title insurance."[14] An injunction that bars one party from taking action against another party amounts to a material alteration of the parties' relationship,[15] and a court may award attorneys' fees if injunctive relief was issued to remedy a Commerce Clause violation.[16] Having prevailed on the merits of its Dormant Commerce Clause counterclaim, and secured a permanent injunction in its favor, NREIS is undeniably the prevailing party.

Though the language of § 1988 provides the court with discretion to decide whether to allow attorneys' fees and costs, "awards in favor of prevailing civil rights plaintiffs are virtually

---

[13]807 F.2d 285 (1st Cir. 1986) (holding that a Rhode Island statute limiting debt collection services to Rhode Island lawyers violated the Dormant Commerce Clause).

[14]Mem. 22, Apr. 13, 2009.

[15]See, e.g., Pearson v. Fair, 980 F.2d 37, 45 (1st Cir. 1992) ("Courts have routinely held that substantive injunctive relief is not de minimis and is a proper basis for an award of attorneys' fees.").

[16]See, e.g., Auto. Club of N.Y., Inc. v. Dykstra, 520 F.3d 210, 217 (2d Cir. 2008) ("AAA's dormant Commerce Clause claim supports the district court's award of fees . . . ."); Homier Distrib. Co. v. City of New Bedford, No. 00-12410-GAO, 2002 WL 1586996, at *1 (D. Mass. July 18, 2002) (holding that there was "no question that the plaintiff," who prevailed on its § 1983 claim that a city ordinance violated the Commerce Clause, "qualifie[d] as a 'prevailing party' under § 1988").

obligatory."[17] The prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."[18] The nonprevailing party has the burden of showing such "narrowly circumscribed" special circumstances, which include "outrageous or inexecusable conduct on the part of the plaintiff or its counsel," "bad faith or obdurate conduct," or "an unjust hardship that a grant or denial of fee shifting might impose."[19] REBA's contentions that allowing attorneys' fees and costs in this case would chill constitutionally protected activities or contradict the purposes of § 1988 fail to satisfy "these stringent criteria."[20]

Given that NREIS is the prevailing party and that REBA has not shown any legally recognized special circumstances, NREIS qualifies for an award of reasonable attorneys' fees and costs.

B.     Calculation of Attorneys' Fees and Costs

The court employs a two-step process to determine the reasonable fees. First, "the number of hours reasonably expended on the litigation [is] multiplied by a reasonable hourly rate"

---

[17]Poy v. Boutselis, 352 F.3d 479, 487 (1st Cir. 2003) (citation and quotation omitted).
Typically, if a defendant is the prevailing party, the defendant "may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." De Jesús Nazario, 554 F.3d at 199 n.3 (citation and quotations omitted). This standard does not apply here, however, because NREIS succeeded on its defense and its Dormant Commerce Clause counterclaim. See, e.g., Riddell v. Nat'l Democratic Party, 624 F.2d 539, 543 (5th Cir. 1980) ("[A]lthough technically defendants, the Loyalists constituted effective plaintiffs on the counterclaim . . . .").

[18]Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citations and quotations omitted).

[19]De Jesús Nazario, 554 F.3d at 200–01 (citations and quotations omitted).

[20]Id. at 201.

to reach the "lodestar" figure.[21]  Second, the court may adjust "the reasonable fee upward or downward if any special factors dictate such a result."[22]

        1.      Lodestar Figure

            a.      Number of Hours

The court should begin its inquiry by determining "the number of hours reasonably expended on the litigation," excluding "hours that are excessive, redundant, or otherwise unnecessary."[23]  The party seeking fees must "submit detailed and contemporaneous time records" in support of the hours its counsel spent on litigation.[24]  Failure to do this is grounds for the court to disallow time that is "insufficiently documented" or "too generic."[25]

NREIS's counsel, the law firm K&L Gates, submitted substantial time records in support of NREIS's fee request.[26]  K&L Gates divided its efforts in this matter into four general phases: (1) "Development and Evaluation of Case; Answers and Counterclaim; Motion to Dismiss Attorney Solomon"; (2) "Discovery"; (3) "Summary Judgment on Defenses, Counterclaim"; and (4) "Fee Application."[27]  These phases consisted of the following efforts: preparing and filing the Notice of Removal; preparing and filing the Answer, Counterclaim, and Motion to Dismiss;

---

[21] Hensley, 461 U.S. at 424.

[22] Deary v. City of Gloucester, 789 F. Supp. 61, 63 (D. Mass. 1992) (citation and quotation omitted).

[23] Hensley, 461 U.S. at 433–34.

[24] Deary, 789 F. Supp. at 64.

[25] Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008).

[26] See Ricciuti Aff. Ex. B at 1, June 8, 2009.

[27] Defs.' Mem. Supp. Mot. Att'ys' Fees & Costs 12.

reviewing and producing documents; serving document requests on REBA; reviewing documents produced by REBA; engaging in discovery conferences; engaging in a protective order dispute, and briefing that dispute for this court; deposing nine different witnesses and defending a deposition of NREIS; preparing and filing the Motion for Summary Judgment and Motion for Summary Judgment on Dormant Commerce Clause Counterclaim; responding to REBA's Motion for Summary Judgment; responding to REBA's Motion to Amend and Alter Judgment; and preparing and filing this fee application.[28]

In its invoices, K&L Gates meticulously recorded all the relevant billing information, including the date on which the work had been completed, the name of the attorney who had rendered the work, the number of hours the attorney had expended, a description of the attorney's efforts, the total amount that the attorney charged for the work, a list of disbursements and other charges, and a monthly summary.[29] Moreover, the monthly invoices were "roughly contemporaneous with the services actually performed."[30] From the total number of hours expended on this case, K&L Gates deducted $18,324.25 in unnecessary fees and a 10% fee discount.[31]

As of NREIS's most recent fee request, attorneys and staff members at K&L Gates had

---

[28]See id. at 10–11. NREIS has since modified its initial request to include additional reductions for the month of April, fees and costs related to this motion and REBA's Motion to Amend and Alter Judgment, and costs incurred during the months of April and May. See Ricciuti Aff. 2–3, June 8, 2009.

[29]See Ricciuti Aff. Ex. A, Apr. 27, 2009; Ricciuti Aff. Ex. A, June 8, 2009.

[30]Dwyer Aff. 2.

[31]See Defs.' Mem. Supp. Mot. Att'ys' Fees & Costs 12; Ricciuti Aff. Ex. B, June 8, 2009.

billed a total of 2,201.60 hours to NREIS.[32] After deductions, NREIS requests fees for a total of 2,112.00 hours of work.[33] As part of its documentation of these hours, K&L Gates listed the eight partners, ten associates, and six staff members who billed time for this case. Of these individuals, partners Irene Freidel and Michael Ricciuti, and associates Robert Sparkes and Leanne Hartmann, billed approximately 88% of the total hours requested.

Ms. Freidel graduated from the University of Michigan Law School in 1991; has experience in commercial litigation and other areas of complex civil litigation, including contracts, environmental, employment discrimination, products liability, and civil rights; and billed 594.20 hours for this case (approximately 28% of the total hours requested) at hourly rates of $410, $490, $540, and $575.[34]

Mr. Ricciuti graduated from Harvard Law School in 1987; has experience in criminal matters, internal investigations, complex domestic and international commercial arbitrations and cases, matters related to homeland security, and matters involving foreign assets and export controls; and billed 375.10 hours for this case (approximately 18% of the total hours requested) at hourly rates of $535, $590, and $625.[35]

Mr. Sparkes graduated from Boston University School of Law in 2005; has experience in general commercial litigation; and billed 773.60 hours for this case (approximately 37% of the

---

[32] See Ricciuti Aff. Ex. B, June 8, 2009.

[33] See id. When discussing the hours that each K&L Gates attorney and staff member billed, this court will refer to time that formed the basis of NREIS's fee application rather than the total number of hours that K&L Gates billed in this case.

[34] See Ricciuti Aff. Ex. C at 13–14, Apr. 27, 2009; Ricciuti Aff. Ex. B at 1, June 8, 2009.

[35] See Ricciuti Aff. Ex. C at 20–22, Apr. 27, 2009; Ricciuti Aff. Ex. B at 2, June 8, 2009.

8

total hours requested) at hourly rates of $290, $350, and $400.[36]

Ms. Hartmann graduated from the University of Michigan Law School in 2006; has experience in commercial litigation; and billed 107.30 hours for this case (approximately 5% of the total hours requested) at hourly rates of $325 and $365.[37]

The other partners who expended time on this case were Michael DeMarco, R. Bruce Allensworth, David Overstreet, Phillip Schulman, James Weiss, and an individual identified as "Greco."  Mr. DeMarco billed 49 hours at hourly rates of $625, $675, and $700.[38]  Mr. Allensworth billed 3.80 hours at hourly rates of $575, $625, and $675.[39]  Mr. Overstreet billed .50 hours at an hourly rate of $335.[40]  Mr. Schulman billed 0.50 hours at an hourly rate of $650.[41]  Mr. Weiss billed 0.40 hours at an hourly rate of $680.[42]  None of the work that Greco provided on this case was included in the instant fee request.[43]

The other associates who assisted in this matter were Nicole Newman, Lindsay Sampson, Kristin Davis, Ryan Tosi, Brian Forbes (who apparently is now a partner), Nadya Fitisenko, an individual identified as "Teng," and Gregory Blase.  Ms. Newman billed 30.00 hours at hourly

---

[36]See Ricciuti Aff. Ex. C at 27–28, Apr. 27, 2009; Ricciuti Aff. Ex. B at 3, June 8, 2009.

[37]See Ricciuti Aff. Ex. C at 15, Apr. 27, 2009; Ricciuti Aff. Ex. B at 2, June 8, 2009.

[38]See Ricciuti Aff. Ex. B at 1, June 8, 2009.

[39]See id.

[40]See id. 2.

[41]See id. 3.

[42]See id.

[43]See id. 2.

rates of $300 and $315.[44] Ms. Sampson billed 22.80 hours at hourly rates of $265, $300, and $340.[45] Ms. Davis billed 20.90 hours at hourly rates of $300 and $315.[46] Mr. Tosi billed 20.80 hours at hourly rates of $245, $325, and $430.[47] Mr. Forbes billed 12.20 hours at an hourly rate of $385.[48] Ms. Fitisenko billed 9.40 hours at an hourly rate of $425.[49] Teng billed 3.10 hours at an hourly rate of $315.[50] None of the work that Mr. Blase provided on this case was included in the instant fee request.[51]

The staff members who billed time for this case were paralegals identified as "Cahill," "Montoni," and "Friedman"; a legal intern identified as "Lawless"; a litigation support analyst identified as "Gibbons"; and a legal librarian identified as "Bradley." Cahill billed 43.00 hours at an hourly rate of $215.[52] Montoni billed 23.50 hours at hourly rates of $195 and $215.[53] Friedman billed 15.80 hours at hourly rates of $195 and $215.[54] Lawless billed 4.00 hours at an

---

[44]See id.

[45]See id. 3.

[46]See id. 1.

[47]See id. 3.

[48]See id. 1.

[49]See id.

[50]See id. 3.

[51]See id. 1.

[52]See id.

[53]See id. 2.

[54]See id.

hourly rate of $280.[55]  Gibbons billed 1.70 hours at an hourly rate of $210.[56]  Bradley billed 0.40 hours at an hourly rate of $185.[57]

i.  Block Billing and Redactions

REBA argues that NREIS's documentation lacks information necessary to determine whether the time that K&L Gates spent in furtherance of this case was excessive, redundant, or unreasonable.  In support, REBA cites K&L Gates's block billing method, by which it would combine all the tasks that an attorney had performed in a given day into a single invoice entry, and K&L Gates's redactions from the billing records.

A review of K&L Gates's invoices reveals that its attorneys and staff members provided clear, well-organized, and sufficiently detailed explanations of all the tasks that they completed for this case.  Moreover, NREIS's expert attests, and K&L Gates's monthly invoices demonstrate, that the invoices were maintained contemporaneously.[58]  REBA has not cited a case that requires more than K&L Gates has provided.  The party seeking fees "is not required to record in great detail how each minute of his time was expended,"[59] but "must ensure that contemporaneous time records are kept in reasonable detail."[60]  NREIS has met this standard.

Likewise, K&L Gates's redactions do not merit a reduction in fees.  For the invoice

---

[55] See id.

[56] See id.

[57] See id. 1.

[58] See Dwyer Aff. 2; Ricciuti Aff. Ex. A, Apr. 27, 2009; Ricciuti Aff. Ex. A, June 8, 2009.

[59] Hensley, 461 U.S. at 437 n.12.

[60] Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 297 (1st Cir. 2001).

entries to which K&L Gates made redactions, it left portions unredacted so as to provide an explanation of the work performed. In addition, NREIS satisfactorily complied with this court's request to file nonprivileged descriptions of the documentation that remained redacted.[61] K&L Gates combed through its billing invoices line-by-line and explained the reason for each redaction, citing attorney-client communication, work product, or expert-related work product.[62] The unredacted portions of the invoices and K&L Gates's nonprivileged descriptions of the redacted material are sufficient to establish that the time spent was reasonable and in furtherance of this litigation.

NREIS's documentation demonstrates that the hours claimed by K&L Gates are an accurate presentation of the time that its attorneys and staff devoted to litigating this case.

ii.   Summary Judgment and Overstaffing

REBA also contends that the time that K&L Gates expended on Parties' summary judgment motions was unreasonable and that K&L Gates otherwise overstaffed this case.

K&L Gates billed 453.50 hours on Phase III, summary judgment.[63] 453.50 hours was a substantial amount of time for preparing and opposing motions for summary judgment. But, given the unique circumstances of this case, this amount of time was reasonable. This case has been hotly contested. The action was brought by a bar association, whose counsel included the Boston law firm Yurko, Salvesen & Remz and the international law firm Holland & Knight.

---

[61]See id. Defs.' Resp. to June 11, 2009 Order & Exs. A (redacted copies of K&L Gates's billing statements), B (spreadsheet log of nonprivileged descriptions of all information redacted).

[62]See id. Exs. A, B.

[63]See Ricciuti Aff. Ex. B at 3, June 8, 2009.

Moreover, REBA had the support of the Massachusetts Bar Association ("MBA"), as evidenced by the MBA's Amicus Brief.[64] In addition to the vigorous and high-quality advocacy in this case, NREIS had to address complex and novel issues of commercial, constitutional, state, and federal law. Increasing the stakes of litigation were the significant public interest implicated by this case, and the financial consequences NREIS would have faced had it lost. The combination of these factors reasonably led to the substantial amount of time that K&L Gates devoted to the critical summary judgment stage, and other phases of the litigation.

Nor was K&L Gates's staffing of this case improper. Though a total of twenty-four individuals billed time for this matter, two partners and two associates performed the majority of the work.[65] The above factors reasonably justified this level of staffing. As the First Circuit has stated, "[g]iven the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic."[66] That was the case here.

This court finds that the number of hours expended by the attorneys and staff at K&L Gates was reasonable and necessary to the efficient resolution of this case.

      b.      <u>Hourly Rate</u>

Next, the court determines "the reasonableness of the hourly rate claimed"[67] by reviewing "the prevailing market rates . . . in the community for similar services by lawyers of reasonably

---

[64] <u>See</u> MBA Amicus Br.

[65] <u>See</u> <u>supra</u> notes 34–37 and accompanying text.

[66] <u>Gay Officers Action League</u>, 247 F.3d at 297.

[67] <u>Calhoun v. Acme Cleveland Corp.</u>, 801 F.2d 558, 560 (1st Cir. 1986).

comparable skill, experience and reputation."[68] In addition, "the court is entitled to rely upon its own knowledge of attorney's fees in its surrounding area in arriving at a reasonable hourly rate"[69] and may "apply different hourly rates for work done at different stages of the case."[70]

K&L Gates submitted two affidavits demonstrating the reasonableness of its rates. The first was by Mr. Ricciuti, who stated that the rates were "reasonable given the fees usually charged for similarly-qualified professionals in Boston."[71] The second was by a partner at the Boston law firm Dwyer & Collora, who conducted an independent fee comparison and attested that the "rates billed were reasonable."[72] Because K&L Gates's rates were proportionate to each attorney's level of expertise and the complexity of the work actually rendered,[73] this court finds the billing rates to be reasonable.

### i.    "Core" and "Noncore" Work

REBA asks this court to distinguish between "core" and "noncore" work and apply a two-thirds reduction to K&L Gates's noncore work. According to REBA, core work encompasses tasks that "require the special skill of lawyers and involves 'independent legal thought,'"[74] and

---

[68]Blum v. Stenson, 465 U.S. 886, 895 & n.11 (1984).

[69]Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996).

[70]Deary, 789 F. Supp. at 66.

[71]Ricciuti Aff. 15, Apr. 27, 2009.

[72]Dwyer Aff. 2–3.

[73]See Defs.' Mem. Supp. Mot. Att'ys' Fees & Costs 25; Ricciuti Aff. Ex. A, Apr. 27, 2009; Ricciuti Aff. Ex. A, June 8, 2009.

[74]Pl.'s Mem. Opp'n Defs.' Mot. Att'ys' Fees & Costs 18 (quoting Alfonso v. Aufiero, 66 F. Supp. 2d 183, 196 (D. Mass. 1999)).

14

noncore work "consists of 'less demanding tasks,'" such as "'letter writing and telephone conversations.'"[75] The First Circuit has not required the core-noncore method of determining attorneys' fees, making "clear that a court has discretion to employ either a unified rate for all legal activities or a differential rate for core and non-core activities."[76] This court declines to apply the core-noncore distinction in this case.

So-called "noncore" work, such as telephone conversations, could require substantial legal thought and be consequential to the course of litigation. REBA has not demonstrated that a rigid demarcation between core and noncore work would be an accurate depiction of the efforts expended in this action. This case "does not present a clear line between core and non-core efforts," and from what this court gleans from NREIS's documentation, "the effort expended was fairly consistent over the course of the litigation."[77] A more accurate approach for this case, and the method that K&L Gates has already applied to its rates, is to modify each attorney's rate

---

[75] Id. (quoting Brewster v. Dukakis, 3 F.3d 488, 492 n.4 (1st Cir. 1993)).

[76] Rolland v. Cellucci, 106 F. Supp. 2d 128, 143 (D. Mass. 2000) (citing Brewster, 3 F.3d at 492). "[T]he more prevalent practice in this district [has been] to apply the core/non-core distinction." Access 4 All, Inc. v. Delancey Clinton Assocs., No. 04-12347-KPN, 2007 WL 118940, at *2 (D. Mass. Jan. 8, 2007) (citing Parker v. Town of Swansea, 310 F. Supp. 2d 376, 391 (D. Mass. 2004) (Dein, M.J.) (applying the core-noncore distinction); LaPlante v. Pepe, 307 F. Supp. 2d 219, 225 (D. Mass. 2004) (Gertner, J.) (same); Alfonso, 66 F. Supp. 2d at 196 (Saris, J.) (same); McLaughlin ex rel. McLaughlin v. Boston Sch. Comm., 976 F. Supp. 53, 62 (D. Mass. 1997) (Garrity, J.) (same)). Others have found "this approach 'unrealistic and potentially inaccurate.'" Access 4 All, 2007 WL 118940, at *2 (Neiman, M.J.) (applying uniform rates) (citing Change the Climate, Inc. v. Mass. Bay Transp. Auth., No. 00-10973-REK, 2005 WL 3735100, at *3 (D. Mass. June 8, 2005) (Keeton, J.) (same); Mogilevsky v. Bally Total Fitness Corp., 311 F. Supp. 2d 212, 217–18 (D. Mass. 2004) (Young, J.) (same)).

[77] Rolland, 106 F. Supp. 2d at 143.

based on the demands of each stage of litigation.[78]

### ii. Rates for Civil Rights Practitioners

REBA also requests this court to reduce NREIS's award to reflect "the prevailing rates for civil rights work" rather than "the prevailing rates of commercial litigators."[79] REBA estimates these hourly rates to be $300 "for an attorney in Boston with significant civil rights experience," $200 to $250 for a "senior litigation associate with five or more years civil rights experience," $175 for "a junior litigation associate," and "$60 for paralegals."[80] Though this court agrees that such rates may be appropriate for the typical civil rights action in which the plaintiff is the party seeking fees, this court finds that they are not applicable to the atypical circumstances of this case.

First, NREIS's posture as the defendant in this action, and the plaintiff on its counterclaim, strongly militates against reducing its hourly rate. As already discussed,[81] in defending this suit, NREIS faced a bar association as plaintiff and the entire MBA as amicus curiae.[82] Filing notices of appearance on behalf of REBA were attorneys from the international commercial law firm Holland & Knight. It was entirely reasonable for NREIS to respond by hiring a prestigious litigation firm itself. Moreover, the significant public interest implicated in this case, coupled with the severe financial consequences that NREIS could have faced had REBA succeeded, all support

---

[78] See Ricciuti Aff. Ex. B, Apr. 27, 2009; Ricciuti Aff. Ex. B, June 8, 2009.

[79] Pl.'s Mem. Opp'n Defs.' Mot. Att'ys' Fees & Costs 22.

[80] Id. at 24–25.

[81] See supra subsection III.B.1.a.ii.

[82] See MBA Amicus Br.

allowing NREIS to recover fees based on the full rates of K&L Gates's commercial litigators. NREIS had no choice but to present a complete defense, including its counterclaim, to REBA's attempts to enforce the unlawful practice of law statute. To reduce NREIS's fee award after it succeeded in doing so would be inequitable and contrary to § 1988's aim of ensuring "effective access to the judicial process for persons with civil rights grievances."[83] Effective access to this particular judicial process reasonably required NREIS to hire commercial litigators.

Second, the commercial nature of this matter supports a fee award predicated on the rates of commercial litigators. The novel questions of state and federal law at issue in this case necessitated an understanding of real estate conveyancing, the provision of title insurance, and the market for providing such services. REBA having argued that NREIS's provision of real estate conveyancing and title insurance services violated the Massachusetts unlawful practice of law statute, it was necessary for NREIS to hire a law firm fully capable of understanding those services and the threat to which REBA's suit posed. Dormant Commerce Clause "cases are often complex" and "involv[e] complex commercial and constitutional litigation."[84] Unlike the customary civil rights case, NREIS had good reason to expect that its defense and Dormant Commerce Clause counterclaim would be best understood and litigated by a corporate law firm.

The cases that REBA cites in support of a fee award based on the rates of civil rights practitioners are inapposite to this action. Porter v. Cabral[85] and LaPlante v. Pepe are not

---

[83] Hensley, 461 U.S. at 429 (emphasis added and internal quotations omitted).

[84] Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc., 381 F. Supp. 2d 499, 504 (E.D. Va. 2005).

[85] No. 04-11935, 2007 WL 602605 (D. Mass. Feb. 21, 2007).

authoritative because in each case, the plaintiff was the party seeking fees. At the hearing, REBA's counsel cited Porter as precedent for the proposition that a prevailing defendant's fee reimbursement could be cut to reflect civil rights bar rates. But, again, in that case it was the plaintiff's fee reimbursement that was cut, not the defendant's. Moreover, neither Porter nor LaPlante involved complex commercial issues. Porter was a First Amendment case,[86] and LaPlante was a right to access the courts (law library) case.[87]

REBA's eighteen-case string cite is similarly unavailing.[88] Though the eighteen cases "provide a reflective picture of what is happening in the market," they "do not necessarily provide precedent regarding the reasonableness of the fees awarded,"[89] and for good reason. Again, in all eighteen cases, the plaintiff was the party seeking fees, and the types of issues presented—First Amendment, Title VII, racial discrimination, excessive force, unlawful search and seizure—were noncommercial. REBA has not cited one case in which the defendant was the party seeking fees for prevailing on a counterclaim or in which the civil rights issue was of a commercial character.

This court concludes, therefore, that the hourly rates that the attorneys and staff members at K&L Gates charged in this matter were reasonable.

        c.        Total Fees and Costs

K&L Gates's total fees for the four phases of this litigation, after deducting $18,324.25 in

---

[86] See id. at *1.

[87] See LaPlante, 307 F. Supp. 2d at 220.

[88] See Pl.'s Mem. Opp'n Defs.' Mot. Att'ys' Fees & Costs 22–24.

[89] McDonough v. City of Quincy, 353 F. Supp. 2d 179, 188 (D. Mass. 2005).

18

unnecessary work and the 10% fee discount, amounted to $851,063.35.[90] Additionally, NREIS requests $48,471.89 in routine litigation costs and $4,540.93 in costs relating to NREIS's Rule 30(b)(6) depositions.[91]  REBA not having offered a substantive opposition to that request,[92] it is allowed.  NREIS's total award for attorneys' fees and costs, therefore, is $904,076.17.[93]

        2.    <u>Fee Adjustment</u>

After computing the lodestar figure, "[i]n rare circumstances the district court can increase a fee award because of the quality of the work performed or the great public importance of the case."[94]  NREIS requests a fee enhancement "only to the extent the Court finds that K&L Gates' actual fee and costs exceed the Court's lodestar calculation."[95]  This court agrees that "this case

---

[90]<u>See</u> Ricciuti Aff. Ex. B, June 8, 2009.

[91]<u>See</u> Defs.' Mem. Supp. Mot. Att'ys' Fees & Costs 28; Ricciuti Aff. 3, Ex. B, June 8, 2009.

[92]Any opposition REBA has to NREIS's request for costs is derivative of the arguments that this court has already addressed.

[93]NREIS disclosed that it had "received $150,000 from the Title/Appraisal Vendor Management Association ("TAVMA") . . . to help defray its legal expenses in this case." Defs.' Mem. Supp. Mot. Att'ys' Fees & Costs 3 n.1.  REBA requests that this court deduct $150,000 from the fee award because this amount "was paid by TAVMA[,] a third party." Pl.'s Mem. Opp'n Defs.' Mot. Att'ys' Fees & Costs 25.  REBA is not entirely correct.  NREIS was responsible for paying K&L Gates's bills but received partial financing for this litigation from TAVMA.  Moreover, "NREIS has decided to repay TAVMA should NREIS recover the full amount of its costs and expenses." Mem. Supp. Mot. Att'ys' Fees & Costs 3 n.1.  There is no reason to reduce NREIS's fee award based on a financing arrangement NREIS entered into with a third-party.

[94]<u>Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake</u>, 771 F.2d 1153, 1160 (8th Cir. 1985).

[95]Defs.' Mem. Supp. Mot. Att'ys' Fees & Costs 27.

19

was handled extraordinarily well by both sides with the minimum of delay"[96] and finds that the lodestar figure will fairly compensate NREIS for its attorneys' fees and costs. This court therefore does not apply a fee multiplier.

IV.     Conclusion

NREIS's Motion for Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 1988 is ALLOWED. This court awards NREIS $904,076.17 in attorneys' fees and costs. AN ORDER HAS ISSUED.

   /s/ Joseph L. Tauro
United States District Judge

---

[96]Dwyer Aff. 3.